Good morning. I'm A.J. Cutchins for the Petitioner and Appellant, Gary German. Because the law is in flux here, there are a variety of templates that can be used to decide the issue that's pending before the Court. But regardless of the approach that's taken, the underlying practical reality remains the same, and so does its constitutional significance. The principal evidence that was used to convict the appellant in this case consisted of the unsworn, untested statements of the killer, James O'Malley, a multiple murderer, a methamphetamine addict, and a man with a penchant for telling wild lies about the crimes that he committed. He had very good reasons to falsely inculpate the appellant in this one. But O'Malley never appeared at appellant's trial. He was never cross-examined. His stories were never tested. The jury never had an opportunity to judge his demeanor on the stand and judge by his manner of giving testimony whether or not he was guilty of the crimes that he committed. And did the trial court, the district court, err in saying, well, if it was testimonial, it was not prejudicial? Because one of the questions I have is whether it was testimonial at all. And I almost didn't come because I anticipated that question. I thought you might have. The – my client's position is, of course, that the district court got that half of it right and was wrong about prejudice. But you know it's not true, right? Pardon? I mean, the standard of testimonial is not it was used in testimony at trial. You know, my duty to the court – I understand that, but you know that's not right. So what happens next? What I was going to say is my duty to the court requires me to agree with you. This – in fact, the district court was wrong about both things. This was not. I believe under Jensen v. Priory, if nothing else, this was clearly not testimonial hearsay. The implications of that, however, are rather complicated. It's a little bit like three-dimensional chess. We don't know yet whether – whether Bakhting will be overruled and if – if not, whether the confrontation clause test – the prior confrontation clause test will still be used to apply to nontestimonial hearsay. But I'm going to – I'm going to say that the way I believe this shakes out is that Bakhting is going to be overruled and that Crawford will not be held to be retroactive. And every case that is so held, that is, that Crawford was not retroactive, has gone on to apply Roberts and Lilly, the familiar standard. I believe that that's the standard that will be applied to all cases in this posture. So I'll speak to that standard. Under that approach, the Court is – is aware that O'Malley's statements spreading the blame to the appellant were not admissible unless they, quote, contained particularized guarantees of trustworthiness. But there was nothing particularly trustworthy about O'Malley's statement in culpating the appellant. O'Malley indisputably told lies about the murders he committed. He was a methamphetamine addict, a group that is known for talking but not particularly known for telling the truth. And while he was bragging about his – about this crime, he also claimed to have been a hitman for the Hells Angels, to have murdered Hells Angels, to be a hitman for the mafia, to have murdered New York City police officers, to have sharpened a toothbrush and murdered someone in prison, even though he wasn't in prison, to have murdered a man named Dennis and sent the body parts to O'Malley's mother's girlfriend. Fortunately, that wasn't true. He bragged and he lied to gain status as an assassin in his community of motorcyclists, drug dealers, drug addicts, and criminals. O'Malley had independent reasons for killing the victim and for inculpating the appellant. And he had excellent reasons for wanting his outlaw community to believe that the appellant had hired him to commit the murder. Otherwise, he was merely the killer of an unarmed woman, the wife of a brother biker at that. Well, wasn't there evidence that the – that your client had essentially said – was facing a potential dissolution and said, you're going to be – I'll see you dead first? I mean, in terms of reliability, there are other indicia, are there not, here in the case of O'Malley, that he may have – that he could have sought her demise. And he got the insurance proceeds. Question whether he knew about the insurance, I understand. But there are other indicia, are there not? There is other evidence that arguably could support my client's conviction for this crime. But the test, as the Supreme Court said in Breck and Katiakos, and as this Court reiterated in Ghent, is not whether there's sufficient evidence other than – other than the unconstitutionally admitted testimony. The question is whether that evidence had a substantial and injurious effect. As to that, I think that there's really no question. The district court was clearly wrong about that. Most of the evidence, most of the prosecution's evidence in this case consisted of various versions of O'Malley's statements. There were – the majority of their civilian witnesses testified to them. Half of them testified to nothing else, had never met the appellant. The prosecution's case was O'Malley's statement. And O'Malley's statements were – were unreliable. Under any particular looking at the particular examination of the facts of O'Malley's context of his lying, of his motive for lying, of his motive for inculpating the appellant, I would – I'm not quite sure I understand what you're arguing. Okay. Do you argue that under ordinary hearsay principles, this should not have been admitted? No. I'm arguing that under – under Ohio v. Roberts and Lilly v. Virginia, these were – these were not – these were not statements that contained particular guarantees – particularized guarantees. Doesn't Davis still trump that? If the Supreme Court says, look, confrontation clause applies only to testimonial statements, these statements aren't testimonial, the fact that prior law might have led courts to apply a confrontation clause to this seems – seems to be a dead letter to me today. The Supreme Court says it doesn't apply in this case. But that's – that's only true if Crawford is retroactive. This case arose after – Do you have any authority that – that flips it around, that says you should apply law that we know today is not good, because at the time, it was believed to be good? Sure. There – I cited, I think, five cases holding that Crawford was not retroactive. But do any of them involve granting relief to the Petitioner? That is, letting somebody go based on law that you know today is not good. I – I can't – I can't tell you offhand what the outcome was. I can tell you what the law was that they applied. And the law that they applied on finding Crawford not retroactive was Roberts and Lilly. Well, the cases that I recognize that you cited are all cases where our Court, for example, is saying the State court was not unreasonable in applying that law then, usually doesn't work the other direction. I mean, if we – if we now know that the law from the Supreme Court is that the Confrontation Clause simply has no place in this case, I have a hard time seeing how we can say the State court was unreasonable in not accepting your client's Confrontation Clause argument. Well, the State court didn't say that. The – what Your Honor is saying – there are two answers to that. And I will – I will hasten to – to get to both of them. The first is that the – that the Supreme Court – I'm sorry. That if – if Crawford is not retroactive, then what Your Honor is saying is the defendants in – in this appellant's position would not – if, in fact, it had been testimonial, would not have – have the right to the Confrontation Clause ruling that favored them under Crawford, but they nonetheless suffer from whatever the negative implications of Crawford are. I submit that that – that that is incompatible with Wordius v. Oregon and – and basic principles of due process. So just in a nutshell, what was unreasonable about what happened in the State court? I'm sorry. What was the unreasonableness of the ruling in the State court under Federal law? I would say the – the State court was both unreasonable and contrary to – to Federal law, because what the State court did was categorically say, any time somebody makes a hearsay statement to a friend that is – that is self-incriminating, that is, by its nature, reliable and trustworthy. This Court ruled in Padilla v. Terry Ewing that that is incompatible with looking particularly at these hearsay statements and whether they are trustworthy and reliable. Okay. Thank you. You've used your time. Good morning. May it please the Court. Juliet Haley appearing for appellee, Warden Lamarck. Going over this terrain, I think that Judge Clifton hit – hit it exactly on the head. Under Crawford, the United States Supreme Court told us that it's only limited to testimonial evidence. And in Davis, if it wasn't clear in Crawford, it was clear in Davis when they said, if it's hearsay and it's not testimonial, other hearsay limitations apply, but not the confrontation clause. End of story. I don't – I don't see how we can then argue that – If the expeditioner says it needs to be a two-way street, so that if Crawford turns out not to be retroactive, if our Court's decision in Bockding is overturned and that question is before the Supreme Court now, then we go back to prior law and apply that today. What's wrong with that? Well, I think that when – I think it's the – I think that you – there are two possibilities. I think one argument is that, as you pointed out, that it would be – we don't have a case in which a defendant is a petitioner, a habeas petitioner is being granted relief based on case law that we now know to not support relief. I do think that you can make an argument that if Crawford is not retroactive, then the question you're asking is you're looking at the State court's decision and the State court, contrary to Mr. Cutchin's suggestion, the State court did not categorically say this is reliable under Lilly. It looked at the evidence. It looked at the specific circumstances. It applied Ohio and Lilly and found that Lilly was wholly distinguishable in conformance with many Federal Circuit decisions for the same reasons, that these were not statements made to police when the guy is under arrest and is – the police are interrogating him, saying, we know you did this. What about that? And you say, well, I didn't do that. My friends did this. This is – this is – that's Lilly. And this – and those are testimonial statements. In this situation, you have pillow talk. I mean, you have this guy telling anybody, you know, everybody and anybody over periods of time, spontaneously, you know, we know that it's not testimonial and it's also not Lilly. So the question I think you could reasonably ask, if Crawford's not retroactive, that you do ask whether the State court got it wrong. Did they deny him his confrontation rights in unreasonably applying the jurisprudence at the time? And I think the answer is clearly no. And that – that fact is now even further affirmed by the fact that it's not even within the confrontation clause. We now know. I don't know if that answers your question. But it – it does. I mean, what's lurking in the background is a question that nobody, myself included, identified as such in thinking about the case, which is – we use the short-term term retroactivity to refer actually to a specific situation, which is can a petitioner claim the benefit of a change in a given Supreme Court precedent? And this is really 180 degrees on that, because the question becomes, well, in this case, the law has changed potentially adversely to the petitioner's case. If the Supreme Court says in a case that sets it up in the traditional way, the petitioner trying to claim the benefit of a change, if the Supreme Court says it's not, quote, retroactive, does that also mean that you apply it the other way around? Well, this isn't the first time we've had retroactivity issues, and I haven't researched the question of whether it applies both ways. I doubt that it does, but that's the question that's lurking out there. No, I had the same question. And I spent some time trying to come up to some analogous situation where, you know, the defense hailed Crawford as this great decision because it – it raised the bar on – on admissions of evidence, but everybody's beginning to realize that it really limited. Supreme Court giveth and the Supreme Court taketh away. There you have it. But I do think that, I mean, I couldn't find a case that would say that when the Supreme – that when you're – here's where I – where I feel uncomfortable joining you in that – in the possibility that he has no remedy, even if we're applying, you know, the jurisprudence of the time, that the state was the decision, is because you also have under the ADPA that the – it has to be – it has to be a Supreme Court president that's well established. And I'm – I'm – I'm a little concerned there of how you would find that the state court – that you would be getting relief – you would be getting no relief based on a decision. I mean, Davis, which definitively says it doesn't – the confrontation clause does not apply to these non-hearsay statements, is based on Crawford. And that is – all of those decisions are just post. Well, I mean, Bochting and Crawford may pose that question. Right. Because if the Supreme – if our Court's decision in Bochting is sustained by the Supreme Court, then he's out of here. Then he's out of here. Right. But it also means that the traditional or more common petition where someone's trying to claim the benefit of Crawford saying, look, I was convicted on collateral attack. I'm trying to raise Crawford-type issues. If the Supreme Court says it's not too late that Crawford is one of those few criminal procedure decisions so fundamental as to be applicable on collateral attack later – Right. I think that probably sweeps the up the question up with it. Yeah. Because it – it can't be said really that Crawford was well established in any real sense. No. But the Supreme Court is saying it is so fundamental that it traces back to earlier case law. I think – I think whether it's a fiction or not, I think the EPTA standard doesn't provide a different barrier. So I don't know where ultimately that gets us, except the Supreme Court will say sometime in the next few months whether or not Crawford is applicable on collateral review. Yeah. Well, let me – this is like a corkscrew. It is. Let me – this case was tried in the 80s. Yeah. Okay. So what, in your view, was the controlling Federal law? The controlling Federal law would be Ohio v. Roberts and, more specifically, Lilly v. Virginia, because that's the Declaration Against Penal Interest case. But I think – I mean, honestly, when you're looking at it under that AEDPA lens, Lilly is so different, the circumstances of Lilly. And that's not saying categorically any time you're not in police custody, it's – you know, you don't have a confrontation clause problem. Or the statement is inherently reliable. But Lilly is so different on all fours, as this court – this circuit court, you know, recognized, and virtually every other circuit court under circumstances similar to these. So I think Lilly would be the controlling authority. And I think that, you know, the statement is reliable. I think that you have – I mean, Mr. Cushins has been very creative in saying, oh, we had all these reasons to lie. But there's – you know, that might be one inference. But the more – the inference found by the state court in determining its admission, even under the state hearsay law, was that he was telling people, because he was upset that the defendant hadn't paid him. And he had – you know, he didn't even need a reason. I mean, he'd gone ahead and – he ended up killing, like, three people that were associated with this gang. So the idea that before and after – you know, and not only that, but unlike the Lilly situation, him inculpating appellant set him up for the death penalty. He's admitting a financial gain special circumstance. So is it – is what you're saying is that this particular situation, the statements have every indicia of reliability and therefore should be basically – were properly admitted? Yes. Under really basically common sense and the standards that, so far as we can determine, applied at the time? Yes. And I think when you look at the state court opinion, you'll see that they did not categorically admit them. They went and they set out Lilly. They analyzed it. They talked about the distinctions. And you – I don't think under any stretch you can say that their determination was unreasonable application of Lilly. The only one thing I wanted to comment on just – So you're saying they satisfied the requirement for the review, the prejudicial review on these statements, regardless of how we go from this point? Yes. I mean, I think that if you – if Bochting's overturned and we're back to Ohio versus Robert, Lilly jurisprudence, defendant does not get relief because – Same result. Yes, same result. Okay. And just one point is that, you know, I do – Mr. Cutchins makes an argument that even if Bochting is upheld and Crawford applies, that we're applying Ohio versus Robert's jurisprudence or something of that sort. And I just think that that's nonsensical to think that if we're in a – let's say we're in a post-Crawford world and non-testimonial hearsay gets this alternative reality confrontation clause jurisprudence. Just – I mean, I think that's – if anything – if there's anything left, you have a due process analysis that's the standard due process. It's not Ohio didn't just move over to the due process clause, as he suggests. It's a due process analysis. But I – I ultimately respectfully think we won't be there because I do think Bochting will be reversed. And I think I'm out of time. If there are any more questions, I'll submit it. Is there going to be any questions? Thank you. The case just argued. He's submitted for decision. You're out of time, are you not? Thank you.
judges: Schroeder, Clifton, Schiavelli